IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MFY FUNDING, LLC,<br><br>      Plaintiff,<br><br>  vs.<br><br>OHIA OPPORTUNITIES, LLC; KANOA ROSS BRISTOL; JOHN DOES 1–50; JANE DOES 1–50; and DOE ENTITIES 1–50,<br><br>      Defendants. | Case No. 21-cv-261-DKW-KJM<br><br>**ORDER (1) GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS 1, 2, AND 3 OF THE COMPLAINT AND (2) GRANTING PLAINTIFF'S MOTION FOR INTERLOCUTORY DECREE OF FORECLOSURE AGAINST ALL PARTIES** |

It is undisputed that Defendants Ohia Opportunities, LLC ("Ohia") and Kanoa Ross Bristol ("Bristol") defaulted on their payments and guaranty to Plaintiff MFY Funding, LLC ("MFY"), in violation of their loan contracts. Accordingly, MFY is entitled to summary judgment in its favor and against Defendants, jointly and severally, as to Count 1 for breach of contract and Counts 2 and 3 for interlocutory decree of foreclosure of the subject mortgage and security interests. Because the appropriate judgment amount, however, remains unclear and additional evidence is necessary, MFY's motion is denied to that extent without prejudice.

1


## **LEGAL STANDARD**

Under Fed. R. Civ. P. 56(a), a court must grant a motion for summary judgment when, considering the record in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

On summary judgment, it is each party's responsibility to "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the initial burden of informing the court of the basis for its motion, identifying the portion of the record "it believes demonstrate[s] the absence of a genuine issue of material fact," and "affirmatively demonstrat[ing] that no reasonable trier of fact could find for other than the moving party" on any of the elements essential to its case. *Id.*; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If it does so, the burden shifts to the non-movant to present significant, probative evidence demonstrating the existence of a triable issue of fact as to the movant's claim or any affirmative defense that it may have. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Soremekun*, 509 F.3d at 984. "There is no express or implied requirement in Rule 56 that the moving party support its motion with . . . materials

*negating* the opponent's claim" or defense. *Celotex*, 477 U.S. at 322–23. Rather, after carrying its own burden, the movant can prevail merely by pointing out the absence of evidence to support the non-movant's case. *Id.*

"For purposes of a motion for summary judgment, material facts set forth in the movant's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party." Local Rule 56.1(g).

## RELEVANT UNDISPUTED MATERIAL FACTS[1]

### I.    MFY's Loan to Ohia

On January 29, 2018, MFY agreed to lend $698,800.00 to Ohia as part of a real property rehabilitation venture. MFY's Concise Statement of Facts ("CSF") ¶ 1, Dkt. No. 57. The loan was evidenced by a January 29, 2018 promissory note (the "Note") executed by Ohia and delivered to MFY. Promissory Note ("Note"), Dkt. No. 1-1. Bristol, the sole member of Ohia, personally guaranteed the loan. CSF ¶¶ 9–10; Payment Guaranty ("Guaranty") at 1 ¶ 1, Dkt. No. 57-6 (guaranteeing "due and punctual payment" to MFY "absolutely and unconditionally"). In accordance with the agreement and the Note, MFY delivered the loan principal amount of $698,800.00 to Ohia shortly thereafter. CSF ¶¶ 1, 3; Declaration of Michael Fairall ("Fairall Decl.") ¶ 4, Dkt. No. 57-1.

---

[1] MFY's concise statement of facts was not opposed by Defendants. *See* Dkt. No. 66. Therefore, the facts advanced in MFY's concise statement may be assumed to be true. *See* Local Rule 56.1(g).

Pursuant to the Note, Ohia promised to make monthly interest payments at the rate of 12% per annum, starting April 7, 2018, and a balloon payment for the balance of the loan on the maturity date of August 7, 2018. CSF ¶ 2; Note at 1 ¶ 1(a). In the event of Ohia's default on its payments, MFY reserved the right to declare the unpaid principal sum, along with all charges and interest accrued, to be immediately due and payable "without presentment, demand, protest, or notice of any kind," with the interest rate then immediately increasing to 24% per annum. *Id.* at 2 ¶ 4.

The Note provided that any late payment would result in a late charge of 10% of the overdue amount. Note at 2 ¶ 5. Additionally, with regard to attorneys' fees and costs, the Note stated:

> If this Note is not paid in full when due, . . . [Ohia] shall pay all costs and expenses of collection (including, but not limited to, reasonable attorneys' fees) and all expenses incurred in connection with the protection or realization of the collateral or enforcement of any guaranty incurred by [MFY] on account of such collection, whether or not suit is filed hereon.

*Id.* at 3 ¶ 7.

Among other things, the loan was secured by a mortgage agreement and the securities outlined in a UCC Financing Statement. CSF ¶¶ 1, 4–10; *see* First Mortgage, Security Agreement, Assignment of Rents, Fixture Filing and Financing Statement ("Mortgage"), Dkt. No. 1-2; UCC Financing Statement recorded at the Bureau of Conveyances on February 7, 2018 as Document No. A-66120431,

("UCC Fin. Stmt."), Dkt. No. 1-5.  Pursuant to the Mortgage, Ohia granted MFY a security interest in the rights, titles, and interests described in the Mortgage, including but not limited to five parcels of land identified by Tax Map Key Nos. (3) 1-4-062-134 ("Kauai Road Property"); (3) 1-5-022: 105 and 151 (together, "23rd Avenue Properties"); and (3) 9-9-002: 021 and 022.  CSF ¶ 11; Mortgage at 2 ¶(a).  The Mortgage further granted MFY a security interest in:

> all of [Ohia]'s right, title, and interest in and to all of the [Ohia]'s personal property of any kind, including, without limitation, all machinery, equipment and building materials, furniture, fixtures, furnishings, fittings, attachments, appliances, . . . as well as all of [Ohia]'s personal property of any kind and description purchased for use in connection with such Improvements, whether or not affixed to or placed upon the Premises.

CSF ¶ 12; Mortgage at 2 ¶(b).  Pursuant to the UCC Financing Statement, Ohia also granted MFY a security interest in, among other things, Ohia's right, title, and interest in any improvements located or constructed on the five properties encumbered by the Mortgage, along with Ohia's personal property.  CSF ¶ 13; UCC Fin. Stmt. at 2.

## II. Ohia's First Default and the Amended Note

Ohia and Bristol failed to pay the monthly interest installments on and after April 7, 2018, and the balloon payment due on August 7, 2018.  CSF ¶ 14.  As a result, on September 17, 2018, MFY, through counsel, sent a Notice of Default and

Demand Letter to Ohia and Bristol, advising them of the default under the Loan and making demand for payment of all amounts due and payable to MFY. *Id.* ¶ 15.

Subsequently, on March 1, 2019, Ohia and Bristol executed a First Amendment of Promissory Note and Confirmation of Guaranty ("Amended Note"), in which, among other things, the maturity date of the Loan was extended to August 29, 2019 in exchange for (i) Ohia's agreement to make monthly payments of $2,000.00 starting on the date of execution, March 1, 2019, and (ii) Ohia's promise to convey to MFY three of the five real properties encumbered by the Mortgage: the Kauai Road Property and the 23rd Avenue Properties. *Id.* ¶¶ 16–17; Amended Note, Dkt. No. 57-7. The principal balance due on the loan was to be reduced by the value of the Kauai Road and 23rd Avenue Properties, upon any sale of said properties by MFY, less MFY's management, maintenance, and other closing expenses on those properties. Amended Note at 2 ¶ 3. The Mortgage continued to be an encumbrance on the two remaining real properties with Tax Map Key Nos. (3) 9-9-002: 021 and 022. CSF ¶ 19. Finally, the amendment provided that, except as amended, the original Note and the Guaranty were to remain in effect. *Id.* at 2 ¶¶ II.A.4, II.B.

On February 11, 2019, as described in the Amended Note, Ohia executed the Warranty Deed in Lieu of Foreclosure, conveying the Kauai Road and 23rd

Avenue Properties to MFY. CSF ¶ 18; Dkt. No. 57-8.[2] MFY later sold the Kauai Road Property for $111,824.12 and the 23rd Avenue Properties for $263,522.99. CSF ¶¶ 29–30. MFY's management, maintenance, closing, and other expenses associated with these sales totaled $57,900.00. *Id.*

### III. Ohia's Second Default

Ohia and Bristol failed to timely make the monthly payments of $2,000.00 starting on March 1, 2019 or the remaining balloon payment on August 29, 2019, as required by the Amended Note. *Id.* ¶¶ 21–23. Ohia did, however, make the following *untimely* payments totaling $17,000.00: $10,000.00 on July 25, 2019; $2,000.00 on August 5, 2019; $2,500.00 on October 4, 2019; and $2,500.00 on December 4, 2019. Fairall Decl. ¶ 12.

On January 4, 2021, as a result of Ohia and Bristol's default under the Amended Note, MFY sent Ohia and Bristol a second default letter. *See* Dkt. No. 57-9. After Ohia and Bristol failed to cure the default, MFY exercised its right to declare the entire principal sum of the Amended Note, along with all charges and interest accrued thereon, to be immediately due and payable. CSF ¶¶ 25–27.

---

[2] The Warranty Deed in Lieu of Foreclosure was signed on February 11, 2019, but recorded on March 1, 2019. Dkt. No. 56-1 at 7 ¶ 11.

## PROCEDURAL BACKGROUND

On June 4, 2021, MFY filed this action against Ohia and Bristol, alleging six counts: (1) Breach and Default under the Note, Amended Note, and Guaranty; (2) Foreclosure on the two remaining mortgaged properties identified by Tax Map Key Nos. (3) 9-9-002: 021 and 022, as described in the Mortgage; (3) Foreclosure on the security interests described in the UCC Financing Statement; (4) Breach and Default under the Assignment of Agreements, Permits, Licenses and Approvals, Dkt. No. 1-3; (5) Foreclosure on the security interests described in the Pledge Financing Statement, Dkt. No. 1-6; and (6) Breach and Default under the Pledge and Security Agreement, Dkt. No. 1-4, and Foreclosure on the security interests described therein.  *See* Dkt. No. 1.

On June 28, 2021, Ohia and Bristol answered the Complaint and alleged several counterclaims against MFY and its sole member, Earl Fuelling.  The counterclaims sounded in tort and involved MFY and Fuelling's activities during the process of executing the loan contracts.  Dkt. No. 13.  After a partially granted motion to dismiss, Dkt. No. 30, an unopposed motion for judgment on the pleadings, Dkt. Nos. 43, 49–50, and, ultimately, a stipulation by the parties, Dkt. No. 85, this Court dismissed the counterclaims with prejudice.

On June 7, 2022, MFY filed the instant Motion for Partial Summary Judgment (MPSJ) as to Counts 1, 2, and 3, contending there is no genuine dispute

of material fact as to whether Ohia and Bristol breached the loan agreements, including the guaranty. Dkt. No. 56. MFY also filed a concise statement of facts (CSF) in support of its MPSJ. Dkt. No. 57. The MPSJ claims entitlement to a balance on the Note and Amended Note, along with attorneys' fees and costs, as explained below.

<u>Balance Claimed</u>

According to MFY, the balance due under the terms of the Note and Amended Note, as of May 9, 2022, includes (i) the remaining principal amount, (ii) accrued interest, and (iii) late charges. The remaining principal equals the original principal balance minus the liquidated values of the Kauai Road and 23rd Avenue Properties, less the closing costs. Thus, the remaining principal amount is calculated as follows: $698,800.00 – ($111,824.12 + $263,522.99 – $57,900.00) = $381,352.89. CSF ¶¶ 28–30; Fairall Decl. ¶¶ 16, 18. MFY's concise statement of facts lists accrued interest due in the amount of $970,489.60. CSF ¶ 28 (showing $987,489.60 interest due, minus $17,000.00 already paid by Ohia); Fairall Decl. ¶ 16. MFY does not detail, however, how it arrived at this figure.[3] MFY's concise statement of facts also claims entitlement to late charges in the amount of

---

[3] In fact, using the Note's 12% interest rate and 24% default interest rate, *see* Note at 1, 2 ¶ 4, the Court could not replicate or even approximate MFY's calculations.

$11,093.51.  CSF ¶ 28; Fairall Decl. ¶ 16.  Again, MFY does not detail how it arrived at this figure.[4]

In sum, MFY claims that, as of May 9, 2022, the amount due under the Note and Amended Note was as follows:

| | |
|---|---|
| Adjusted Principal: | $ 381,352.89 |
| Interest: | $ 970,489.60 |
| Late Fees: | $   11,093.51 |
| Total: | $1,362,936.00 |

CSF ¶¶ 28–30; Fairall Decl. ¶ 16.

Attorneys' Fees and Costs Claimed

MFY also claims entitlement to an estimated $120,000.00 in legal and administrative fees and costs, as of May 9, 2022.  CSF ¶ 28; Fairall Decl. ¶¶ 16–17.  MFY does not provide an accounting or any other factual justification for this amount.  The Court notes that in MFY's January 4, 2021 second default letter to Ohia and Bristol, MFY claimed an estimated $5,500.00 in legal fees accrued to that point.  This action was filed six months after that, and the litigation has been active now for approximately sixteen months.

On August 12, 2022, Defendants filed a ten-page Memorandum in Opposition to the MPSJ, but neglected to include any concise statement of facts,

---

[4]Under the Note, MFY was entitled to late charges in the amount of 10% of any overdue amount.  *See* Note at 2 ¶ 5.  Even with this contractual guidance, however, the Court cannot hazard a guess as to how MFY's $11,093.51 figure was derived.

10

either in response to MFY's CSF, or in support of its own opposition. Dkt. No. 66. Without any supporting evidence, the opposition brief mostly reiterates Defendants' complaints about MFY and Fuelling's dealings with Ohia and Bristol during the time the parties were executing their loan agreements. The brief also expresses Defendants' after-the-fact dissatisfaction with the terms of the loan agreements they signed.[5]

On August 18, 2022, MFY replied to Ohia and Bristol's opposition brief, Dkt. No. 67, and the Court subsequently elected to decide this matter without a hearing. *See* Dkt. No. 70.[6] This Order now follows.

## DISCUSSION

**I.  MFY has carried its burden of showing the absence of a genuine issue of material fact that Defendants are in breach of their loan contracts.**

To prevail on a breach of contract claim, a plaintiff must show: (1) there is a valid contract between the parties; (2) the plaintiff performed under that contract; (3) the defendant failed to perform a particular provision of the contract; and (4)

---

[5]The opposition brief also included a two-paragraph statement about the Truth-in-Lending Act (TILA). No argument was adequately formed or expressed: it is not at all clear what is being claimed or contended. Read generously, Defendants conclusorily implied, without supporting detail, that the contracts failed to provide Ohia with a "clear and accurate disclosure[] of terms dealing with things like finance charges, annual percentage rates of interest, and [Ohia]'s rights." Dkt. No. 66 at 9–10. Because the contracts appear to be clear and accurate, because Defendants have not asserted such a claim, and because Defendants have offered no opposing concise statement of facts or evidence, the Court deems any TILA musings to be meritless.

[6]On September 21, 2022, MFY sent a letter to the assigned Magistrate Judge, requesting a settlement conference. Dkt. No. 80. After an October 14, 2022 conference, no settlement was reached. Dkt. No. 86.

such failure proximately caused the plaintiff's reasonably foreseeable injury. *See Calipjo v. Purdy*, 439 P.3d 218, 225 (Haw. 2019).

There is no genuine dispute of material fact as to any of these elements here. It is undisputed (1) that the Note, Amended Note, and Guaranty are valid contracts between MFY, Ohia, and Bristol,[7] *see* CSF ¶¶ 1–3, 9, 16–17; Dkt. Nos. 1-1, 57-6–7; (2) that MFY performed its duties under the loan contracts, *see* CSF ¶ 31; Fairall Decl. ¶ 10; and (3) that Ohia and Bristol did not perform their duties under the contracts by failing to make timely payments under both the Note and Amended Note. *See* CSF ¶¶ 14–17, 21–23; Fairall Decl. ¶ 12.[8]

Finally, (4) MFY's alleged damages were reasonably foreseeable to Ohia and Bristol at the outset. Ohia agreed to pay back the $698,800.00 loan, at 12% interest, within just a few months from the loan delivery on January 29, 2018; monthly interest payments were to commence on April 7, 2018, and the balloon payment was to be due on August 7, 2018. Ohia also agreed to a 24% default interest rate, and Ohia and/or Bristol signed the Personal Guaranty, Mortgage, and

---

[7]Ohia and MFY are parties to the Note; Bristol and MFY are parties to the Guaranty; and Ohia, Bristol, and MFY are parties to the Amended Note. CSF ¶¶ 1, 9, 16.

[8]Despite their complaints about MFY's behavior during their business relationship, *see, e.g.*, Dkt. No. 66 at 3–7, Defendants have provided no evidence tending to show that MFY failed to perform its obligations under the Note, Amended Note, or Guaranty. In fact, Defendants' only opposition to the MPSJ principally consists of, in its own words, a "narrative . . . take[n] from [their] Counterclaim, Dkt. No. 13," which counterclaim was never supported with evidence and was dismissed with prejudice on October 14, 2022. Dkt. No. 85.

UCC Financing Statement, in which they jointly and severally agreed to secure the loan.

Moreover, on March 1, 2019, after already having defaulted on the first Note, Ohia and Bristol signed an Amended Note and recorded the Warranty Deed in Lieu of Foreclosure. Through these documents, Defendants conveyed the Kauai Road and 23rd Avenue Properties to MFY and agreed to pay the balance of the Amended Note within just a few months—by August 29, 2019—along with a $2,000.00 monthly good-faith payment commencing immediately. Bristol explicitly confirmed his Personal Guaranty within that document.

Taking the evidence in the light most favorable to Defendants, there is no indication that any of MFY's alleged missteps violated a legal contract or agreement between the parties. By contrast, it is undisputed that Ohia and Bristol repeatedly failed to live up to their legal promises to MFY. The liability Defendants have incurred, and the damages MFY has accrued, were reasonably foreseeable every step of the way.

In sum, MFY has carried its burden of demonstrating that "no reasonable trier of fact could find for [Ohia or Bristol]" on any of the elements essential to the breach of contract or foreclosure claims, and Defendants have presented no evidence showing a genuine issue of material fact as to any affirmative defense.

*See Soremekun*, 509 F.3d at 984. MFY is thus entitled to summary judgment on its breach of contract claim.

Notwithstanding Defendants' evident contractual liability, MFY has not adequately explained the derivation of its substantial accrued interest claim.[9] The conclusory figures in the Fairall Decl. (¶ 16) are not sufficient. Accordingly, a judgment amount on Count 1 must await supplemental evidence.

**II.    MFY has carried its burden of showing the absence of a genuine issue of material fact as to the elements of foreclosure against the Mortgage and UCC Financing Statement security interests.**

To be entitled to summary judgment on a claim for interlocutory decree of foreclosure, a plaintiff must prove: (1) the existence of the relevant agreement; (2) the terms of the agreement; (3) default under the terms of the agreement; and (4) the giving of requisite notice, if any. *See Bank of Honolulu v. Anderson*, 654 P.2d 1370, 1375 (Haw. App. 1982).

There is no genuine dispute of material fact as to any of these elements here. Neither party disputes the existence or validity of the relevant agreements—the Note, Amended Note, Guaranty, Mortgage, and UCC Financing Statement—or the agreements' relevant terms. The Mortgage and UCC Financing Statement promised MFY the interests described in those documents as security for the Note

---

[9]Nor has MFY adequately set forth its entitlement to its claimed $120,000 in attorneys' fees. *See infra*, Section III.

and Amended Note. *See* Relevant Undisputed Material Facts, *supra*. There is also no dispute that Ohia and Bristol defaulted under the terms of the Note, Amended Note, and Guaranty, implicating those security interests.

Finally, although there was no requirement for notice, *see* Note at 2 ¶ 4 (stating that upon default, MFY could declare the unpaid principal and interest accrued to be immediately due and payable "without presentment, demand, protest or notice of any kind"); *ibid.* at 3 ¶ 8 (stating that Ohia and Bristol "waive[d] diligence, presentment, protest and demand and also notice of protest, demand, dishonor and nonpayment of th[e] Note"), MFY provided it anyway, *see* CSF ¶¶ 15, 25, with no cure by Defendants.

In sum, as there is no genuine dispute of material fact that the four elements for foreclosure and interlocutory decree have been met, MFY is entitled to summary judgment on Counts 2 and 3.

### III. MFY's request for reasonable attorneys' fees and costs is DENIED WITHOUT PREJUDICE.

MFY requests reasonable attorneys' fees in the amount of approximately $120,000.00, with the final figure to be determined at a future date. *See* CSF ¶ 28; Fairall Decl. ¶ 16. MFY, however, provides no legal or factual justification for this number or its purported reasonableness. *See generally* Dkt. Nos. 56–57. Among other things, there is no information about MFY's various attorney timekeepers or their respective billing rates, no description of each timekeeper's skill, experience

15

or reputation, no description of what each timekeeper did, and no indication of the time spent performing each unidentified task. *See* Haw. Rev. Stat. § 607-14 (requiring the prevailing party's attorneys to submit an explanatory affidavit "stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee"); *Roberts v. Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) ("It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate.") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Sam K. ex rel. Diane C. v. Haw. Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015) ("The burden is on the fee applicant 'to produce satisfactory evidence' of the prevailing market rates.") (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."); Local Rule 54.2(f), (h) (requiring parties requesting attorneys' fees to provide, among other things, a "summary table" detailing the timekeeper, hours spent, and hourly rate, an itemization and description of the work performed, and a supporting affidavit that explains the

relevant qualifications, experience, and case-related contributions of the timekeepers).

MFY's attorneys' fees request is denied without prejudice so that it may remedy these omissions.

## CONCLUSION

MFY has shown that there is no genuine dispute as to any material fact relating to its breach of contract and foreclosure claims. Therefore, MFY's MPSJ, Dkt. No. 56, is GRANTED as to Counts 1, 2, and 3. The Court, however, reserves judgment as to the amount of damages resulting from these claims, pending additional support from MFY regarding its accrued interest and attorneys' fees. Any attorneys' fees request, in particular, must be sought consistent with the requirements of LR54.2.

MFY is hereby directed to submit a joint stipulated order, implementing the foreclosure of the real properties at Tax Map Key Nos. (3) 9-9-002: 021 and 022, including, without limitation, the appointment of a commissioner and outlining the commissioner's powers, and property set forth in the UCC Financing Statement.

Counts 4, 5, and 6 of the Complaint survive this Order. Non-jury trial on these three counts is set to commence at 9:00 a.m. in Aha Kupono before the

undersigned on April 24, 2023. Should trial of these counts be unnecessary in light of this Order, counsel are directed to advise the Court forthwith.

IT IS SO ORDERED.

DATED: November 4, 2022 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*MFY Funding, LLC v. Ohia Opportunities, LLC, et al*; Civil No. 21-00261 DKW-KJM; **ORDER (1) GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS 1, 2, AND 3 OF THE COMPLAINT AND (2) GRANTING PLAINTIFF'S MOTION FOR INTERLOCUTORY DECREE OF FORECLOSURE AGAINST ALL PARTIES**